*To Be Argued By Michael H. Sussman*

# 14-3131-cv

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---------------------------------------------------------

ROBERT CLAVIN,

*Plaintiff-Appellant,*

v.

COUNTY OF ORANGE,

*Defendant-Appellee.*

---------------------------------------------------------

**On Appeal from an Order and Judgment of the**
**United States District Court for the Southern District of New York**

---

### APPELLANT'S BRIEF-IN-CHIEF & SPECIAL APPENDIX

---

Michael H. Sussman
SUSSMAN & WATKINS
*Attorneys for Plaintiff-Appellant*
P.O. Box 1005, 1 Railroad Ave, Ste. 3
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]
sussman1@frontiernet.net

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………... iii

PRELIMINARY STATEMENT…………………………………….... 1

STATEMENT OF JURISDICTION……………………………........ 2

STATEMENT OF ISSUES PRESENTED…………………………… 3

STATEMENT OF THE CASE……………………………………..... 4

STATEMENT OF FACTS…………………………………………... 5

SUMMARY OF ARGUMENT……………………………………... 12

STANDARD OF REVIEW………………………………………… 14

ARGUMENT………………………………………………………... 15

Point I

Clavin's due process claims arising from the County's failure to issue him
a Master Electrician License and, instead, issuing him an inferior Class C
license are timely under the applicable three year statute of limitations, and
the district court erred in dismissing these claims as untimely…………… 16

   A. Clavin's 2011, 2012 and 2013 due process claims are timely………. 16

   B. Clavin's 2010 due process is timely under the continuing violation
       doctrine…………………………………………………………….. 25

Point II

The Licensing Law, as amended, is unconstitutionally vague because it
fails to clearly set forth the requisite qualifications for applicants seeking
electrical licenses and authorizes and encourages arbitrary and
discriminatory application and enforcement……………………………… 30

CONCLUSION…………………………………………………………… 36

CERTIFICATE OF COMPLIANCE…………………………………... 37

SPECIAL APPENDIX…………………………………………………… SA-1

# TABLE OF AUTHORITIES

## Cases

Ashcroft v. Iqbal,
     129 S.Ct. 1937 (2009)……………………………………………… 14, 15

Bell Atlantic Corp. v. Twombly,
     550 U.S. 544 (2007)……………………………………………... 14, 15

Connolly v. McCall,
     254 F.3d 36 (2d Cir. 2011)………………………….......  21, 22, 23, 24, 25

Cornwell v. Robinson,
     23 F.3d 694 (2d Cir. 1994)……………………………………….. 18, 26, 27

Cunney v. Board of Trustees of the Village of Grand View, New York,
     600 F.3d 612 (2d Cir. 2011)…………………………………………….. 31

Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor,
     973 F.Supp. 338 (E.D.N.Y.1997)……………………………….. 27, 28

Guardians Ass'n of the N.Y.C. Police Dep't., Inc. v. Civ. Serv.
Comm'n. of City of New York,
     633 F.2d 232 (2d Cir. 2980)……………………………………….. 23

Jaghory v. N.Y. State Dep't. of Educ.,
     No. 95-CV-3478 (FB), 1996 WL 712668 (E.D.N.Y. Dec. 5, 1996)  13, 18, 20, 28

Jaghory v. N.Y. State Dep't. of Educ.,
     131 F.3d 326 (2d Cir. 1997)…………………………………….. 18, 19, 28

Pearl v. City of Long Beach,
     296 F.3d 76 (2d Cir. 2002)……………………………………….... 16

Remigio v. Kelly,
     No. 04-Civ-1877 (JGK/MHD), 2005 WL 1950138
     (S.D.N.Y. Aug. 12, 2005)……………………………….... 26, 28, 29, 30

Selevan v. New York Thruway Authority,
 584 F.3d 82 (2d Cir. 2009)……………………………………… 14

Singleton v. City of New York,
 632 F.2d 185 (2d Cir. 1980)…………………………………….. 16

Yip v. Bd. of Trustees of the State Univ. of New York,
 No. 03-CV-00959 (SR), 2004 WL 2202594 (W.D.N.Y. Sept. 29, 2004)… 28, 29

Yip v. Bd. of Trustees of State Univ. of New York,
 150 Fed.Appx 21 (2d Cir. 2005)………………………………... 28

**Statutes**

28 U.S.C. § 1291………………………………………………….. 2

28 U.S.C. § 1331………………………………………………….. 2

42 U.S.C. § 1983………………………………………………….. 2

42 U.S.C. § 1988………………………………………………... 2

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6)…………………………………………….. 14

## PRELIMINARY STATEMENT

This case demonstrates the ill results that may ensue when a well-intentioned law is poorly drafted and improperly administered. Defendant-Respondent COUNTY OF ORANGE has attempted a laudable feat in promulgating a licensing law to protect consumers of electrical contracting services in the County. But the law fails to clearly set forth the licensing structure and requisite qualifications for applicants and, thus, allows the kind of arbitrary and discriminatory application and enforcement as is manifest here.

Plaintiff-Appellant ROBERT CLAVIN qualified for, and was clearly entitled to receive, a Master Electrician's License under the plain terms of the licensing law. In fact, he did receive such a license in 2009. However, the County denied him the same in 2010, 2011, 2012 and 2013 and, instead, issued an inferior Class C license. The County's decisions in this regard were arbitrary and unjustified and made without notice to Clavin or an opportunity to review or rebut them.

The district court below did not reach the merits of Clavin's individual due process claims and, instead, erroneously dismissed the same as untimely under the applicable three year statute of limitations. But his claims as to the 2011, 2012 and 2013 acts are timely because each of these discrete and separately actionable due process deprivations occurred within three years of his filing the instant suit and, in any event, all are actionable under the continuing violation doctrine, including the

1

otherwise untimely 2010 deprivation, because they resulted from an over-arching policy and practice of the County and involve separate but related, continuous and unremedied unconstitutional acts.

The Licensing Law is also unconstitutionally vague and, as applied to Clavin in this case, deprived him of due process because the County's arbitrary and discriminatory application thereof led it to improperly deny him the Master Electrician's License for which he qualified and to which he was entitled. The district court below erred in rejecting this claim on the merits.

As the district court erred in dismissing Clavin's complaint in its entirety, its judgment should be reversed and vacated and the matter remanded.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

As Clavin's claims arise under the Fourteenth Amendment to the United States Constitution, as made actionable by 42 U.S.C. § 1983, the district court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. After the district court entered judgment ordering Clavin's complaint dismissed and the Clerk's Office closed the case on August 6, 2014, Clavin timely filed his Notice of Appeal on August 26, 2014. Thus, this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

(1) Whether the County's refusals to provide Clavin a Master Electrician License in 2011, 2012 and 2013 constitute independent claims accruing at the time of each such refusal such that his February 2014 complaint is timely as to these independent claims and, therefore, the district court erred in holding that his claims accrued when the County first denied him such licensure in March 2010 making his claims untimely, where the applicable licensing law requires annual re-application subject to independent review and decision each year.

Answer: Yes.

(2) Whether the continuing violation doctrine applies and renders Clavin's due process claim arising from the County's March 2010 deprivation of his Master Electrician License actionable herein where that unconstitutional act was the first in a series of separate but related, continuous and unremedied such acts and, ultimately, stems from the County's unconstitutional policy and practice in the issuance of electrical licenses.

Answer: Yes.

(3) Whether Local Law No. 8 of 2007, as amended by Local Law No. 2 of 2011, is unconstitutionally vague, where it fails to clearly set forth the licensing structure and qualifications for applicants and fails to provide objective standards such that

the law lends itself to arbitrary and discriminatory application and enforcement and has been so arbitrarily and discriminatorily enforced against Clavin.

Answer: Yes.

## STATEMENT OF THE CASE

Plaintiff-Appellant ROBERT CLAVIN commenced this action on February 6, 2014 alleging that Defendant-Respondent COUNTY OF ORANGE (the "County") violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution by denying his applications for licensure as a Master Electrician in 2010, 2011, 2012 and 2013 despite his qualifications and entitlement to receive such licensure. His complaint also challenges the County's licensing law as unconstitutionally vague.

On March 14, 2014, the County moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). By Memorandum and Decision dated August 4, 2014, the District Court for the Southern District of New York (Hon. Vincent L. Briccetti, U.S.D.J.) granted the County's motion, dismissing Clavin's complaint in its entirety and holding that Clavin's due process claims accrued when the County first denied his application for the Master Electrician License in March 2010 and were time-barred under the applicable three year statute of limitations. It also rejected Clavin's vagueness challenge, holding that the law sufficiently sets forth the requisite

4

licensing qualifications and provides the licensing board an adequate process to review applicants' qualifications and issue licenses.

The clerk entered final judgment on August 6, 2014 and Clavin timely filed his Notice of Appeal on August 26, 2014. By this appeal, Clavin seeks an order reversing and vacating the district court's judgment and remanding the matter for further proceedings.

## STATEMENT OF FACTS

Clavin is a plumber and electrician by trade and has continuously engaged in his trades since 1987 (JA-6 at ¶ 4). In both residential and commercial settings, he performs electrical work on refrigeration and air conditioning units and their electrical components, repairs and installs well pumps (both 110 and 220 volts), provides service upgrades and installs additions, pools, hot tubs, area lighting and fixtures, generators and transfer switches (Id.).

In 2007, seeking to regulate the electrical contracting profession, the County enacted Local Law No. 8 of 2007 (the "Licensing Law"), which established a licensing regime requiring any person "engage[d] in, carry[ing] on or conduct[ing] the business of, or hold[ing] himself or herself out as, an electrical contractor in the County of Orange" to be licensed by the County as a Master Electrician pursuant to the Licensing Law (JA-26 [Section 3. License Required]). This law also established the Orange County Electrical Licensing Board (the "Licensing Board") to administer

the law and issue (or deny as the case may be) licenses pursuant to its provisions

(JA-26-28 [Section 4. Electrical Licensing Board.; Section 5. Powers of the Board]).

Under the law, an applicant must demonstrate a minimum of seven years'

experience in the field [JA-31 [Section 10. Qualifications for Applicants for

Licenses]) and pass an examination administered by the Licensing Board (JA-32-33

[Section 12. Examinations]). The applicant must also

> prove to the satisfaction of the Board is a competent
> electrician and qualified to do electrical contracting,
> construction and installation of electrical wiring; has a
> working knowledge of electricity and the natural laws,
> properties and functions of electricity and of appliance,
> apparatus, materials, devices for electric, light, heat,
> power and signaling systems used and required in such
> work, combined with a practical working knowledge of
> the requirements and provisions of the National Electrical
> Code and a knowledge of the provisions of this local law
> and the rules and regulations of the Board and the State of
> New York, if any, and of the county of Orange for
> installation of electrical wiring, devices, appliances and
> equipment and of the provisions thereof requiring permits
> therefor.

(JA-31 [Section 11. Other Qualifications]). The law provides no objective standards

by which to measure an applicant's "competence" or "qualification to do electrical

contracting" and, in fact, applied no such standards when contemplating Clavin's

annual applications for licensure as a Master Electrician and failed to provide him a

process by which he could demonstrate such qualifications (JA-11 at ¶¶ 30-34)

The law contains a grandfathering clause, which allows applicants to obtain licensure without examination if the applicant (1) possesses a Master Electrician's License issued by Middletown, Newburgh or Port Jervis that is valid and effective as of the date the Licensing Law was adopted and who applies for licensure within two years of same date, or (2) can demonstrate he or she has been "continuously and competently doing the work of a Master Electrician in Orange County for at least eleven (11) consecutive years prior" to the law's adoption and that such work constitutes a "principal source of livelihood" for the applicant (JA-33-34 [Section 15. Grandfather Clause, ¶¶ A and B]).  A person failing to apply under the Grandfather Clause within two years of the law's enactment must comply with all other requirements (JA-34 [Section 15. Grandfather Clause, ¶ E]).

Licenses issued under the law are valid for only one year and must be renewed annually (JA-28 [Section 7. Licenses; Term, Renewal, Fees]).

In March 2009, Clavin applied for a Master Electrician License under the law's grandfather clause (JA-6 at ¶ 5).  The Licensing Board determined he met the requirements of the Grandfather Clause, approved his application and issued him a Master Electrician License (Id. at ¶ 6) which was valid through March 31, 2010, at which time he was entitled to automatic renewal of the same for an additional year upon timely submitting a renewal application and the applicable fee (Id. at ¶ 7).

In March 2010, Clavin timely submitted his renewal application and applicable fee, but the County did not re-issue his Master Electrician License, for which he qualified and to which he was entitled under the law's Grandfather Clause (JA-7 at ¶ 9). Instead, without notice or explanation, the County issued him an inferior Class C License (Id.). Before so acting, following receipt of his application, the County made no inquiry of Clavin as to his qualifications (Id. at ¶ 10). Following denial of his renewal of the master license, appellant complained to the County's Commissioner of Consumer Affairs, explained how his broader skill set met the criteria for a Master License and that the Licensing Board had already deemed him so qualified. He received no written explanation as to why his status changed; instead, the Commissioner simply warned him to restrict his work to plumbing and heating or there would be adverse consequences (JA-7-8 at ¶¶ 11-13).

In 2011, the County amended the Licensing Law (JA-40-61) implementing the following changes:

(1) Defined two additional classes of electrical license – Class B and Class C (JA-41 [Section 2. Definitions]);

(2) Added the Commissioner of Consumer Affairs as a member of the Licensing Board (JA-42 [Section 4. Electrical Licensing Board]);

(3) Permitted the Commissioner to issue notices of violations and appearance tickets (JA-43 [Section 5. Powers of the Board, ¶ J]);

8

(4) Established "Regulations for Adjudicatory Proceedings" to govern hearings reviewing determinations of the Licensing Board (JA-49 [Section 14. Denial of Licenses; Hearings, ¶ B]; JA-55-61);

(5) Extended the time by which applicants may apply under the Grandfather Clause from two to five years after adoption of the Licensing Law (compare JA-34 [Section 2. Grandfather Clause ¶ E] with JA-50 [Section 15. Grandfather Clause, ¶ E]);

(6) Repealed the provision formerly requiring Master Electricians to maintain a local office (JA-50 [Section 17. Office Requirements (repealed in its entirety)]); and

(7) Enhanced and established new penalties for violations of the Licensing Law and other offenses (compare JA-35-36 [Section 19. Imposition of Fines; Refusal, Suspension or Revocation of License] with JA-51-52 [Section 19. Imposition of Fines; Refusal, Suspension or Revocation of License and Section 20. Penalty for Offenses]).

Aside from the foregoing changes, the 2011 amendments left the substantive provisions of the Licensing Law largely intact. Notably, although the 2011 amendments *defined* Class B and Class C licenses, they provided absolutely no substantive provisions regarding those classes of license – *i.e.*, no provisions guiding

the Licensing Board in how and when to determine if an applicant should be issued a Class B or Class C license instead of a Master Electrician License.

In other words, the plain language of statute makes clear that an applicant thereunder is applying for only a Master Electrician License (not any inferior class license) (see JA-44 [Section 6. Applications for Licenses, ¶ A ("Every person *seeking a Master Electrician's License* in Orange County shall make application . . . ." [emphasis added])]; Id. [Section 7. Licenses; Term, Renewal, Fees, ¶ A ("The Board may issue and renew a *Master Electrician's License* . . . ." [emphasis added])]; JA-46 [Section 9. Applications ("Every person desiring a license *as a Master Electrician* under this local law [emphasis added])]).

The plain language also makes clear that all qualifications are set forth for a Master Electrician License (not any inferior class license) (see JA-46-49 [Section 10. Qualifications for Applicants for Licenses; Section 11. Other Qualifications; Section 12. Examinations; Section 13. Approval or Denial of License]). Indeed, aside from their reference in the definitions section, the terms "Class B" and "Class C" are not once repeated throughout the entire Licensing Law. Thus, under the plain language of the statute, an applicant does not apply for a Class B or Class C license, but for a Master Electrician License only.

Clavin's 2010 Class C license was valid for only one year and, thus, in March 2011, under the newly amended Licensing Law, he applied again for a Master

Electrician License (JA-8 at ¶¶ 15-16). Since he applied within five years of adoption of the 2007 Licensing Law and otherwise met the requirements for grandfathering as he did in 2009 when the Licensing Board issued him a Master Electrician License under the Grandfather Clause, Clavin again qualified for grandfathering and was entitled to a Master Electrician License under that provision (JA-8 at ¶¶ 15-16; JA-12 at ¶¶ 35-36; JA-50 [Section 15. Grandfather Clause, ¶ 15]). Despite his entitlement, the County failed to issue him a Master Electrician License and, instead, without notice or explanation and without an opportunity to defend his application or demonstrate his competence for the same, issued him an inferior Class C License (JA-9 at ¶ 17).

Clavin re-applied in March 2012 and 2013, but despite meeting all requirements, was again denied a Master Electrician License by the County, which re-issued his Class C license instead (JA-19 at ¶¶ 19, 21; JA-12 at ¶ 36).

In 2012, Clavin commenced a proceeding under Article 78 of the New York Civil Practice Law and Rules in New York State Supreme Court to challenge the County's refusal to issue him a Master Electrician License as arbitrary and capricious. Supreme Court dismissed his petition as untimely and did not reach the merits (JA-9 at ¶¶ 19-20). When the County against refused to issue him a Master license in March 2013, Clavin timely commenced an Article 78 proceed (JA-9 at ¶ 21; JA-12 at ¶ 38). After reviewing the parties' written submission and hearing oral

argument, Supreme Court granted Clavin's petition and ordered the County to issue him a Master Electrician License (JA-12-13 at ¶ 39-40).

Instead of complying with the Court's Order, the County appealed the same, invoking the automatic stay provision of New York Civil Practice Law and Rule 5519(a)(1) (JA-13 at ¶¶ 41-42). At the time Clavin filed his Complaint in the within action in February 2014, the County's appeal was still pending and, in fact, remains pending today. Thus, even if Clavin prevails, his victory will be mooted as he will need to reapply for licensure, requiring him to start the process anew upon the County's denial thereof (JA-13-14 at ¶¶ 43-45).

## SUMMARY OF ARGUMENT

Clavin's due process claims arising from the County's failure to issue him a Master Electrician License and, instead, issuing him an inferior Class C license in 2011, 2012 and 2013, are timely under the applicable three year statute of limitations, and the district court erred in dismissing these claims as untimely.

The district court premised its holding upon its erroneous conclusion that *all* of these claims accrued when the County first refused to issue Clavin a Master Electrician License in March 2010. But that conclusion was erroneous since, under the Licensing Law's annual re-application/renewal provision, each subsequent refusal was a discrete act accruing a new due process claim. Thus, Clavin's February

2014 complaint was timely as to his claims for the County's due process violations arising in 2011, 2012 and 2013.

The district court also erred in construing Clavin's claims as asserting a continuing violation theory and in relying heavily on <u>Jaghory v. N.Y. State Dep't. of Educ.</u>, No. 95-CV-3478 (FB), 1996 WL 712668 (E.D.N.Y. Dec. 5, 1996).

Since each annual refusal constituted a discrete due process violation, Clavin need not rely upon the continuing violation doctrine to render his claims arising from the 2011, 2012 and 2013 refusals timely. Moreover, the non-controlling district court decision in <u>Jaghory</u> is readily distinguishable from this case because, *inter alia*, the plaintiff there did not, and *could not*, claim, like Clavin does here, that the defendant engaged in discrete unconstitutional acts after its initial act.

In any event, the continuing violation doctrine *does* apply here because the County's annual refusals to issue Clavin a Master Electrician License over the course of four years are specific, ongoing and unremedied such that they amount to an unconstitutional policy or practice. And, under that doctrine, Clavin's February 2014 is complaint is timely even as to the County's initial March 2010 refusal.

Finally, the district court erred in dismissing Clavin's claim that the Licensing Law is unconstitutionally vague. As explained in greater detail herein, contrary to the district court's conclusions, the Licensing Law does *not* clearly set forth the

licensing structure and requisite qualifications for applicants and *does* encourage arbitrary decision-making by the Board in issuing licenses under the law.

Since the district court erred in all of the foregoing respects, its judgment should be reversed and vacated and the matter remanded for further proceedings.

## STANDARD OF REVIEW

This Court reviews the district court's dismissal of Appellant's complaint *de novo*. See Selevan v. New York Thruway Authority, 584 F.3d 82, 88 (2d Cir. 2009). When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), the court must "construe plaintiffs' complaint liberally, accepting all factual allegations . . . [as] true, and drawing all reasonable inferences in plaintiffs' favor." Id. (quotations and citations omitted).

The Court must determine whether the Complaint "state[s] a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). This inquiry is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). Where the factual content of the pleading "allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," the pleading "has facial plausibility." Id. at 1949.

"The plausibility standard is not akin to a 'probability requirement,'" see id. at 1949, and, in fact, "a well-pleaded complaint may proceed even if it strikes a savvy

14

judge that actual proof of those facts [pleaded] is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (quotations and citations omitted). Indeed, a pleading need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Iqbal, 129 S.Ct. at 1949. Ultimately, a pleading must allege facts that are more than "merely consistent with a defendant's liability." Id. If, accepting all well-pleaded factual allegations as true, the court determines that the complaint "plausibly give[s] rise to an entitlement to relief," see Iqbal, 129 S.Ct. at 1950, it must deny the motion.

## ARGUMENT

In his complaint, Clavin alleged that the County violated his due process rights in 2010, 2011, 2012 and 2013 by arbitrarily and unjustifiably issuing him a Class C electrical license in those years instead of the Master Electrician License for which he applied and to which he was clearly entitled under the provisions of the Licensing Law. He also alleged that the Licensing Law itself is unconstitutionally vague and that this infirmity resulted in the deprivation of his due process rights.

Since the district court below did not reach the merits of Clavin's individual due process claims, but rather dismissed the same as untimely, the merits will not be addressed herein as to those claims. For the reasons that follow, Clavin's individual 2010, 2011, 2012 and 2013 due process claims are timely and he has adequately

pleaded a vagueness challenge to the licensing law. Accordingly, the district court's judgment should be vacated and his complaint reinstated.

## Point I

**Clavin's due process claims arising from the County's failure to issue him a Master Electrician License and, instead, issuing him an inferior Class C license are timely under the applicable three year statute of limitations, and the district court erred in dismissing these claims as untimely.**

Clavin's due process claims are timely and the district court erred in holding otherwise. A claim arising under 42 U.S.C. § 1983 in New York is subject to a three year statute of limitations, see Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002), and accrues on the date "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. at 80 (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).

Here, Clavin's 2011, 2012 and 2013 due process claims are timely under the applicable statute of limitations. Moreover, his 2010 claim is timely under the continuing violation doctrine.

### A. Clavin's 2011, 2012 and 2013 due process claims are timely.

Clavin alleges that he applied for a Master Electrician License in March 2011, 2012 and 2013 under the provisions of the Licensing Law requiring annual re-application/renewal, and, despite his entitlement thereto, the County, in each year he applied, arbitrarily, without justification and without providing any formal

explanation or an opportunity to review or rebut its decision, refused to issue him that license and, instead, issued him an inferior Class C license.

Each time the County reviewed and arbitrarily denied Clavin's application without proper procedures constituted a discrete violation of his due process rights for which a cause action of action under § 1983 accrued on the date Clavin was aware, or reasonably should have been aware, of that violation. See Pearl, 296 F.3d at 80. Accordingly, Clavin's February 2014 commencement of this action is timely to challenge each of the County's 2011, 2012 and 2013 due process violations.

In holding that Clavin's claims were untimely asserted, the district court concluded, without explanation, that they *all* accrued in March 2010, when the County first issued him a Class C license instead of the Master Electrician License for which he applied (SA-6). But that conclusion is erroneous because it fails to recognize the nature of Clavin's due process claims.

The district court appears to have misconstrued Clavin's argument – that each annual license denial by the County constituted a discrete and separately actionably due process violation -- as a continuing violation argument: "Plaintiff argues this process is continuing to unfold and it deprives plaintiff of due process. To the extent plaintiff is making a continuing violation argument, the Court is unpersuaded" (SA-7 [quotation marks & citations omitted]). But in doing so the district court conflated both Calvin's argument and the continuing violation doctrine.

Under the continuing violation doctrine, a plaintiff who demonstrates either (1) "specific ongoing discriminatory policies or practices," or (2) "specific and related instances of discrimination [that] are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice" may "challenge all conduct that was part of that violation, even conduct that occurred outside the limitations period." See Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).

Thus, Clavin would need to invoke the continuing violation doctrine to reach back and challenge only the 2010 deprivation, which occurred outside the statute of limitations. However, he need not rely on this doctrine to challenge the 2011-2013 deprivations, which are subsequent discrete acts occurring within the applicable three year statute of limitations.

The district court's heavy reliance upon Jaghory v. N.Y. State Dep't. of Educ., No. 95-CV-3478 (FB), 1996 WL 712668 (E.D.N.Y. Dec. 5, 1996), aff'd., 131 F.3d 326 (2d Cir. 1997) does not cure its erroneous reasoning (see SA-6-7). In Jaghory, a foreign-born graduate of a non-U.S. medical school applied for a license to practice medicine in New York. See 131 F.3d at 328. Under applicable New York laws and regulations, all applicants were required to demonstrate at least one year of postgraduate hospital training to qualify for a license. See Id. But, a graduate of a non-U.S. medical school, such as the plaintiff, was required to demonstrate three years of such training, unless he or she was a resident of the United States, in which

case the applicant qualified for the so-called "Fifth Pathway" program and needed to demonstrate only one year of postgraduate hospital training. See Id. at 328-29. Since the plaintiff was a non-U.S. resident at the time he completed medical school outside the U.S., he was denied entry into the "Fifth Pathway" program. See Id. at 329.

The plaintiff applied for a medical license in 1983 and was denied because he could not demonstrate the requisite three years of post-graduate hospital training. See Id. at 328-29. He applied again in 1984 and 1985 but was denied both times, again, because he lacked the requisite post-graduate training. See Id. at 329. In 1985, under a statutory waiver provision, the licensing board granted the plaintiff two years' credit toward the three year post-graduate training requirement. See Id. But he never completed that year of training and, instead, despite his "continuing protest[s] and objection[s]" to the State's policy, was denied licensure upon his repeated re-applications through 1994. See Id. The licensing Board finally granted the plaintiff a license in 1995. See Id.

He then brought suit in federal court that same year, alleging that the State's policy of precluding non-U.S. residents from the "Fifth Pathway" program unlawfully discriminated on the basis of national-origin and that its 1983 decision to deny him entry into that program solely on the basis of his national origin violated his Equal Protection rights. See Id. at 328-29.

The district court below in this case quoted from the district court's decision in Jaghory:

> The court found that "the alleged discriminatory act visited upon plaintiff was simply the denial of his license application in 1983 . . . . Neither the State's denial of plaintiff's subsequent protests and objections nor the alleged rejection of his 1994 renewal application constitute a continuing violation."

(SA-7 [quoting Jaghory, 1996 WL 712668 at *5] [alterations accepted]). The district court below cited this holding from Jaghory to support its conclusion that Clavin could not invoke the continuing violation doctrine. But, as already explained, Clavin need not rely upon that doctrine to challenge the 2011-2013 deprivations.

To the extent the district court's discussion of Jaghory may be interpreted as supporting its otherwise unexplained holding that *all* of Clavin's due process claims accrued when the County first denied him a Master Electrician License in 2010, such reliance is misplaced. Indeed, the unpublished, non-binding district court decision in Jaghory is readily distinguishable from this case.

The thrust of the plaintiff's claim in Jaghory was that the State's decision to preclude him from the "Fifth Pathway" program in 1983, which decision he alleged discriminated against him on the basis of his national origin, prevented him from obtaining a medical license until 1995. Though the plaintiff repeatedly objected to and protested that decision, and the policy upon which it was based, and re-applied each year for licensure, the *only* allegedly unlawful act taken by the State was when,

in 1983, it refused to permit him into the "Fifth Pathway" program, allegedly on the basis of his national origin. He did not, and *could not*, allege any subsequent unlawful acts by the State. Thus, while the alleged unlawful act continued to affect the plaintiff for twelve years, he was aware of this injury at the time it occurred in 1983 when his action accrued.

By contrast, in this case, the County engaged in a separate unconstitutional act *each year* Clavin applied anew for a Master Electrician License and it chose, each year, to arbitrarily deprive him that license, to which he was entitled, without adequate procedures. Thus, Clavin did not know, or have reason to know, of the County's subsequent unlawful deprivations until they occurred each year and, thus, accrued anew.

In this regard, this Court's decision Connolly v. McCall, 254 F.3d 36 (2d Cir. 2011) is directly on point. In that case, the plaintiff retired from the NYPD and was fully vested in his accrued retirement benefits from that job. See Connolly, 254 F.3d at 39. A few months after retiring, he began working for the New York State Organized Crime Taskforce (the "Task Force"). See Id.

As a retired civil service employee re-employed in a new civil service positon, the plaintiff was subject to two inter-related State statutes – namely, (1) Section 150 of New York Civil Service Law, which provides that the retirement or pension benefits of a retired civil service employee re-employed in the civil service are

suspended while he or she is so re-employed and receiving a salary from the second job, and (2) Section 211 of New York Retirement and Social Security Law, which permits such employees to waive out of Section 150 and receive their retirement benefits while reemployed and receiving a salary, but, in doing so, excludes them from participating in the pension plan associated with the second job. See Id. This Court explained the significance of these provisions:

> Taken together, these provisions require a retired state or local employee who accepts a subsequent state or local job to choose, during the period he receives a salary from the second job, between (1) not receiving pension benefits from the first job but accruing additional pension benefits from the second job, or (2) receiving pension benefits from the first job but not accruing further benefits from the second job. Option (1) is the default, whereas election of option (2) requires affirmative application by the employee and approval by the relevant administrator. Moreover, section 211 waivers are valid for no more than two years, after which time they must be renewed.

Id. at 39-40 (citations omitted).

The plaintiff had chosen option (2) since he began his second job with the Task Force in 1984 and, thus, had reapplied every two years for the section 211 waiver. See Id. at 40. In 1998, he sued, alleging that the above-described provisions of the State's pension and retirement system violate federal due process and equal protection guarantees. See Id. The district court held that the plaintiff's claims accrued when he began working his second job for the Task Force in 1984 and "knew or should have known he would not be permitted to participate in a second pension

plan" and, thus, dismissed the complaint as barred by the three year statute of limitations and did not reach the merits of plaintiff's claim. Id.

This Court disagreed with the district court's holding as to the statute of limitations, but ultimately affirmed dismissal on the merits. See Id. It held that the district court was incorrect in holding that the plaintiff's claims accrued in 1984, and its well-reasoned explanation is particularly apt and instructive here:

> The harm plaintiff complains of – his inability to accrue Task Force pension benefits – is always the result of actions taken no more than two years before, that is, when the most recent section 211 wavier was sought and granted. In this respect, this case is most analogous to those involving the repeated application of a discriminatory policy, such as Guardians Association of the New York City Police Department, Inc. v. Civil Service Commission of City of New York, 633 F.2d 232 (2d Cir. 2980). In Guardians we considered the repeated use of a hiring list, complied by using a discriminatory examination, to decide hiring priority for the New York Police Department. We concluded that a new violation accrued each time the list was used to make an employment determination, even though the order of the list had been determined at an earlier date. See Id. at 250-51. Similarly, here Connolly, notwithstanding the fact that he knew in advance of this requirement, was forced every two years to give up accrual of Task Force pension benefits in order to retain his NYPD pension. As a result, a new claim accrued each time.
>
> Appellees contend that construing New York's conduct in this way, and therefore giving Connolly a new cause of action with each renewal of the section 211 waiver, would unfairly "save an action that the plaintiff could have brought within the limitations period had he exercised reasonable diligence." But this objection relies on the

erroneous assumption that, when a person knows in advance that he will be injured, his claim accrues even before he has suffered injury.

Instead, what matters is when the plaintiff knows or has reason to know of *the harm* that he seeks to redress, not when the plaintiff knows of a policy that will, sometime in the future give rise to that harm.

\* \* \* \* \*

In sum, this is not a case in which the plaintiff simply continues to feel the effects of a time-barred wrongful act. Whatever might have been the case had there been a single irrevocable decision in 1984 to forgo the Task Force pension benefits in order to receive the NYPD benefits, here New York required Connolly to renew that choice, and it cannot complain if an action is based on the existence of this requirement.

Id. at 41-42 (some quotations & citations omitted) (emphasis in original). Thus, this Court held that the plaintiff's claims were timely with respect to his most recent section 211 waiver and noted that, since it was rejecting his claims on the merits, it need not decide whether the continuing violation doctrine applies. Id. at 42 and n.1.

Applying this Court's astute reasoning in Connolly to this case, the *harm* about which Clavin complains is the County's actual due process deprivations in 2011-2013. Whether or not he might have been able to predict the County's conduct based on its 2010 deprivation is of no moment; rather the relevant inquiry is when he knew or should have known of *the harm* it inflicted in subsequent years. Since each harm did not occur until the County actually arbitrarily deprived him of the

license to which he was entitled without adequate procedures in 2011, 2012 and 2013, his claims for such deprivations did not accrue until he was aware that those deprivations occurred in those respective years. In short, his claims arising from the 2011-2013 denials do not merely complain of continuing ill effects of the 2010 denial, but rather directly challenge those subsequent, discrete deprivations.

Indeed, like in <u>Connolly</u>, notwithstanding what "might have been the case" if the County issued "a single irrevocable decision" in 2010 limiting Clavin to a Class C license, it instead required him to re-apply each year and "it cannot complain if an action is based on the existence of this requirement." <u>See Id.</u> Thus Clavin's due process claims arising from the County's deprivations in 2011-2013 accrued in those years and are timely challenged by Clavin's February 2013 complaint.

## B. Clavin's 2010 due process claim is timely under the continuing violation doctrine.

Since Clavin's due process claim arising from the Count's 2010 deprivation accrued more than three years prior to his complaint herein, that individual claim would ordinarily be untimely. But the continuing violation doctrine applies in this case and, pursuant thereto, since Clavin has timely commenced this suit as to the latest of the County's due process violations, Clavin may reach back beyond the limitations period to challenge this 2010 deprivation as well.

Under the continuing violation doctrine, a plaintiff may challenge an otherwise untimely unconstitutional act if he or she can show that the act is part of

an unconstitutional policy or practice and has timely filed his or her complaint as to at least one of the acts that are part of the policy. See Cornwell, 23 F.ed at 704. "While discrete incidents . . . that are not related to the  . . . policy or mechanisms may not amount to a continuing violation, a continuing violation may be found where there is proof of a specific ongoing [unconstitutional] policies or practices, or where specific and related instances of [unconstitutional conduct] are permitted . . . to continue unremedied for so long as to amount to a[n unconstitutional] policy or practice." Id. (quotations & citations omitted).

This doctrine is typically applied in discrimination case, like those arising under Title VII; however, this court and other circuit courts have applied the doctrine outside of the Title VII context where constitutional violations are alleged. See Remigio v. Kelly, No. 04-Civ-1877 (JGK/MHD), 2005 WL 1950138, at *7 (S.D.N.Y. Aug. 12, 2005) (collecting cases).

Here, Clavin has adequately alleged the County's overarching unconstitutional policy and practice of arbitrarily and unjustifiably denying him the Master Electrician License for which he has annually applied and to which is was entitled under the provisions of the Licensing Law and, instead, issuing him an inferior Class C license without explanation.  Despite his efforts to challenge the County's determinations and to demonstrate his qualifications for the Master license, the County failed to respond or provide any justification for its conduct or to conduct

a hearing at which he could challenge its decision. What's more, when Supreme Court held that the County failed to adequately review Clavin's application or to justify its determination and ordered it to issue Clavin a Master Electrician License, the County appealed, invoking New York's automatic stay provision and, thus, perpetually thwarting and undermining Clavin's victory. Such an unconstitutional policy is actionable under the continuing violation doctrine.

At the very least, Clavin has alleged that the County's repeated annual due process violations constitute "specific and related instances" of unconstitutional conduct that are "permitted by [the County] to continue unremedied for so long as to amount to [an unconstitutional] policy or practice." See Cornwell, 23 F.3d at 704; See also Deepwells Estates Inc. v. Incorporated Village of Head of the Harbor, 973 F.Supp. 338, 345-47 (E.D.N.Y.1997) (applying continuing violation doctrine where plaintiff challenged separate but related, discrete allegedly unconstitutional takings).

The district court below rejected application of the continuing violation doctrine in this case citing Jaghory and concluding that this case does not present the "compelling circumstances" required by courts to apply that doctrine (SA-7). But the district court's reasoning is flawed.

First, as noted above, Jaghory is distinguishable because, there, the plaintiff was merely complaining of the continued effects of the original – and untimely – discriminatory act. Since "[c]ontinuing violations are occasioned by continuing

unlawful acts, not by continued ill effects from an original violation," <u>Deepwells</u> <u>Estates</u>, 973 F.Supp. at 346 (E.D.N.Y.1997), the doctrine could not avail Jaghory. By contrast, here, as explained, Clavin complains of repeated discrete unconstitutional violations that stem from an overarching, unconstitutional policy and practice and, otherwise, are related and permitted by County to continue to unremedied so as to constitute an unconstitutional policy or practice.

Second, the district court's reference to "compelling circumstances" is misplaced. To be sure, district courts in this circuit have held that the continuing violation doctrine is looked unfavorably upon and should only be applied in compelling circumstances. <u>See</u>, <u>e.g.</u>, <u>Remigio</u>, 2005 WL 1950138 at *8; <u>Yip v. Bd.</u> <u>of Trustees of the State Univ. of New York</u>, No. 03-CV-00959 (SR), 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004); <u>Jaghory</u>, 1996 WL 712668 at *5. But we have uncovered no binding precedent from this Court discussing or explicitly endorsing this limiting requirement.[1] Indeed, this Court's explication of the doctrine in <u>Cornwell</u> makes no such reference to compelling circumstances and that case, which controls here, should provide the applicable rule of decision in this matter.

---

[1] This Court affirmed <u>Yip</u> in a non-binding Summary Order and did not provide any discussion of the district court's "compelling circumstances" holding. <u>See Yip v. Bd. of Trustees of State Univ.</u> <u>of New York</u>, 150 Fed.Appx 21 (2d Cir. 2005) (Summary Order). This Court also affirmed <u>Jaghory</u>, but on different grounds than the district court and, thus, had no occasion to discuss, and therefore did not discuss, the district court's reference to compelling circumstances. <u>See Jaghory</u> <u>v. New York State Dep't. of Educ.</u>, 131 F.3d 326 (2d Cir. 1997).

In any event, even if this Court were to require a showing of compelling circumstances, Clavin has adequately alleged such circumstances here. The district courts have explained that such circumstances may be found "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." Yip, 2004 WL 2202594 at *4. Of course, this is not an exhaustive list.

In Remigio, the district court held that the plaintiff "articulated the kind of 'compelling circumstances' where the continuing violation doctrine should apply. See 2005 WL 1950138 at *11. There, the plaintiff's vehicle had been seized and subject to forfeiture after his arrest for driving while intoxicated. See Id. at *1. Though he commenced his action more than three years after the initial seizure of his car, his alleged that the City's failure, for years, to provide him a hearing at which he could contest its seizure of his car and attempt to divest him of his property through forfeiture constituted a continuing violation that deprived him of due process each day the City failed to provide him with such a hearing. See Id. at *6-*11. Thus, in finding "compelling circumstances," the court concluded: "The recalcitrance of the defendants in failing to hold a due-process hearing, supported by

state and federal case law holding that a prompt hearing was required, cries out for a remedy and for application of the continuing-violation doctrine." Id. at *11.

Similarly, here, Clavin alleges that the County has never explained to him its justification for repeatedly refusing to issue him a Master Electrician License year after year despite his entitlement thereto and has failed to provide him a hearing or other opportunity to rebut its decisions or demonstrate his entitlement. Moreover, when he finally prevailed in State Court, the County thwarted his victory by invoking the automatic stay provision on appeal. Like in Remigio, this type of conduct "cries out for a remedy and application of the continuing-violation doctrine." Id.

Accordingly, Clavin may challenge the County's denial of his Master Electrician License in 2010.

## Point II

**The Licensing Law, as amended, is unconstitutionally vague because it fails to clearly set forth the requisite qualifications for applicants seeking electrical licenses and authorizes and encourages arbitrary and discriminatory application and enforcement.**

In addition to his claims that the County, through the Licensing Board, deprived him of due process when it arbitrarily and unjustifiably issued him a Class C license instead of the Master Electrician License for which he applied and was qualified and to which he was entitled, Clavin also contends that the Licensing Law, as amended, is unconstitutionally vague because it fails to clearly set forth the

requisite qualifications for applicants seeking electrical licenses and authorizes and encourages arbitrary and discriminatory application and enforcement by the Licensing Board. Thus, the County's refusals to license him as Master Electrician pursuant to such a vague and constitutionally infirm law deprived him of due process.

A law may be held unconstitutionally vague and, thus, violative of due process, where either (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." Cunney v. Board of Trustees of the Village of Grand View, New York, 600 F.3d 612, 620-21 (2d Cir. 2011).

In rejecting Clavin's vagueness claim, the district court below, without any substantive discussion or analysis, and in conclusory fashion, simply held:

> [The Licensing Law] clearly set[s] forth the licensing structure and the requisite qualifications for individuals seeking electrician's licenses" and "provide[s] for the Orange County Electrical Licensing Board to review qualifications and issue licenses to qualified applicants. Although assessing applicants' qualifications is an inherently individualized and fact specific inquiry, the law does not encourage arbitrary or discriminatory decision-making.

(SA-9). Respectfully, the district court is wrong.

31

First, as amended, the Licensing Law does not "clearly set forth the licensing structure and the requisite qualifications for individuals seeking electrician's licenses" (SA-9). Most illustrative of this fact is the failure of the 2011 amendments to provide any substantive guidance – to either the applicant or the Licensing Board – as to how and when an applicant will qualify for an inferior Class B or Class C license instead of a Master Electrician License.

Before the 2011 amendments, the only license available under the Law was for Master Electrician. The only provisions the 2011 amendments added regarding inferior class licenses are their definitions, *to wit*: "'Class B Electrician License' – An electrical license issued to an applicant for the sole use at, and limited to, a specific facility, as an employee of that facility" and "'Class C Electrician License' – An electrical license issued to an applicant for the sole purpose and limited to, work in a specific profession" (JA-41 [Section 2. Definitions]). Aside from these definitions, the Licensing Law is entirely devoid of any reference, whatsoever, to these inferior classifications and so, as it was prior to the 2011 amendments, the law remains entirely about applications and qualifications for, and issuances of, Master Electrician Licenses. A simple review of the amended licensing law illustrates this point well.

The Licensing Law provides that the Licensing Board shall have the power to, *inter alia*, "[i]ssue licenses as authorized by this local law to applicants

possessing the requisite qualifications" (JA-43 [Section 5. Powers of the Board, ¶ E]). It then provides: "Every person *seeking a Master Electrician License* in Orange County shall make application, along with the required fee, to the Board in the form and manner prescribed by this local law and any rules and regulations of the Board" (JA-44 [Section 6. Applications for Licenses, ¶ A (emphasis added)]). It also provides that "the Board may issue and renew a *Master Electrician License*" [Id. [Section 7. Licenses; Term, Renewal, Fees, ¶ A (emphasis added)]). However, the law says nothing about applicants seeking a Class B or Class C license or the board issuing or renewing the same.

The provisions regarding applications and qualifications are further illustrative. Specifically, Section 9, governing applications, provides: "Every person desiring a license *as a Master Electrician* under this local law and who meets the qualifications set forth herein shall apply for a license in such a form and detail as the Board may prescribe" (JA-46 [Section 9. Applications (emphasis added)]). The next section specifies the qualifications for such applicants and, in light of the fact that this provision reads *exactly* as it did prior to the 2011 amendments, when the Master Electrician License was the only available license, and refers to "Applicants" as described in Section 9 as those seeking a Master Electrician License, it is clear that these qualifications apply only to the Master Electrician License (JA-47 [Section 10. Qualifications for Applicants for Licenses]). Likewise, Section 11, specifying

33

"other qualifications," refers, and thus applies, only to "[a] person who applies for *a Master Electrician's License* . . . ." (JA-32 [Section 11. Other Qualifications (emphasis added)]). The amended Grandfather Clause too speaks only of a Master Electrician License (see JA-49-50 [Section 15. Grandfather Clause]).

The foregoing analysis poses more questions than it answers, the most significant – and, for our purposes, dispositive – of which is: How is one to divine from the mere definitions of Class B and Class C Licenses when and how an applicant is to be issued such an inferior class license instead of a Master Electrician License? Indeed, if a person qualifies under the provisions of the Licensing Law, then, by its very terms, that person "shall" be issued a Master Electrician's License, and not any class of inferior license (see JA-48 [Section 13. Approval or Denial of License]).

In light of the inherent ambiguity of the Licensing Law in this regard, it is impossible for an applicant to know how his application will be reviewed and for the Licensing Board to know how to treat the same. And since the law provides no objective standards, the Licensing Board is authorized to apply the law in an arbitrary manner.

Such arbitrary application is illustrated in this very case. The Licensing Board concluded that Clavin met all qualifications for a Master Electrician in 2009. Nothing changed in his qualifications or in the law's requirements for that license

between 2009 and his subsequent applications except that, in 2011, the County defined two new classes of inferior licenses. Since the law provided absolutely basis to review applications for such inferior licenses and no guidelines on when to issue such inferior licenses in lieu of the Master Electrician's License, the Licensing Board was permitted to, and did, act arbitrarily in issuing Clavin a Class C license instead of a Master Electrician License.

The County provided Clavin no explanation as to why it so acted because, as Supreme Court recognized, there is no rational explanation. The calculus is simple: if Clavin met the qualifications of the Licensing Law, then under its very terms he should have been issued a Master Electrician's License. There is absolutely nothing in the law that provides for the provision of an inferior license. Moreover, Clavin alleges that other applicants with similar or lesser qualifications than he have retained their Master Electrician License and have not been so downgraded to a Class C license as he has, thus further demonstrating the arbitrary and discriminatory application of the law.

Since the Licensing Law fails to clearly set forth the licensing structure and requisite qualifications and, because it provides no clear objective standards by which the Licensing Board should review applications, the law authorizes and encourages arbitrary and discriminatory application.

# CONCLUSION

For all of the foregoing reasons, the district court's judgment should be reversed and vacated, Clavin's complaint reinstated and the matter remanded for discovery and further proceedgins.

Dated:    Goshen, New York
          October 29, 2014              Respectfully submitted,

                                        SUSSMAN AND WATKINS
                                        *Attorneys for Plaintiff-Appellant*

                                        By: _____
                                            Michael H. Sussman, Esq.
                                            SUSSMAN AND WATKINS
                                            P.O. Box 1005
                                            1 Railroad Avenue, Ste. 3
                                            Goshen, New York 10924
                                            (845) 294-3991 [Tel.]
                                            (845) 294-1623 [Fax]
                                            sussman1@frontiernet.net

TO:    Hyun Chin Kim, Esq.
       Senior Asst. County Attorney
       LANDON C. CHAPMAN
           ORANGE COUNTY ATTORNEY
       *Attorneys for Defendant-Appellee*
       15 Matthews Street, Suite 305
       Goshen, New York 10924
       (845) 291-3150 [Tel.]
       (845) 291-3167 [Fax]

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,501 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.

Dated:     Goshen, New York
           October 29, 2014

                                        _____
                                        MICHAEL H. SUSSMAN

37

# SPECIAL APPENDIX

## SPECIAL APPENDIX – TABLE OF CONTENTS

Memorandum Decision (August 4, 2014)...………………………………SA-1-9

Judgment (August 6, 2014)………………………………………………...SA-10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT CLAVIN,                                          :
               Plaintiff,                      :
                              :     **MEMORANDUM DECISION**
v.                                                      :
                              :     14 CV 769 (VB)
COUNTY OF ORANGE,                                       :
               Defendant.                      :
-----------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Robert Clavin brings this Section 1983 action against the County of Orange,

alleging defendant's failure to issue a Master Electrician's License deprived plaintiff of property

without due process of law.  Plaintiff also challenges the local law governing the issuance of

Master Electrician's Licenses, alleging the law is unconstitutionally vague.

      Now pending is defendant's motion to dismiss under Rule 12(b)(6).  (Doc. #4).

      For the reasons set forth below, the motion is GRANTED.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

BACKGROUND

      For purposes of ruling on this motion, the Court accepts as true all well-pleaded factual

allegations in the complaint and draws all reasonable inferences in plaintiff's favor.

      Plaintiff is a plumber and electrician who has performed commercial and residential

plumbing and electrical work since 1987.

      At issue are plaintiff's applications for a Master Electrician's License pursuant to County

of Orange, Local Law No. 8 of 2007 and as amended by Local Law No. 2 of 2011.

      Local Law No. 8 of 2007 established qualifications for a Master Electrician's License, set

forth examination requirements, and empowered the Orange County Electrical Licensing Board

(the "Board") to review qualifications and issue Master Electrician's Licenses to qualified

1

applicants. Local Law No. 8 also contained a grandfather clause allowing certain applicants to receive a license without an examination and established a renewal procedure for such applicants.

Local Law No. 2 of 2011 amended the previous Local Law No. 8. The relevant change was the addition of the Class B Electrician License and the Class C Electrician License, which are more limited than the Master Electrician's License.

In March 2009, plaintiff applied for and received a Master Electrician's License through the grandfather clause. Plaintiff's license was valid through March 31, 2010. Plaintiff alleges "despite his compliance with the applicable procedures" for renewal of a Master Electrician's License, the County "did not re-issue his Master Electrician's license" and plaintiff instead received a Class C License in 2010.[1] (Compl. ¶¶ 9-10).

By March 2011, plaintiff had taken training courses required by the 2011 version of the law. In March 2011, plaintiff applied for a Master Electrician's License and again received a Class C License.

Accordingly, in 2012, plaintiff commenced an Article 78 proceeding in New York State Supreme Court, which was dismissed as untimely filed.

In 2013, plaintiff was again issued a Class C License[2] and commenced another Article 78 proceeding. The court "ordered the County to issue [plaintiff] a Master Electrician's license[,] finding that there was no record of any consideration of plaintiff for said license, no meeting

---

[1]     The Court notes an inconsistency regarding the chronology of the complaint. Although a 2011 law created the Class C License, plaintiff claims he received such a license in 2010.

[2]     It is unclear whether plaintiff applied for and received a license in 2012. Although the complaint discusses plaintiff's "entitlement to issuance of a Master Electrician's License in 2011, 2012, 2[0]13 and 2014" (Compl. ¶ 36), the complaint makes no other reference to plaintiff's application for a license for the 2012 year. However, per plaintiff's brief in opposition to the motion to dismiss, plaintiff applied for a license in 2011, 2012, and 2013. (Doc. #8).

minutes in which plaintiff's qualifications were discussed or acted upon and no showing that the
[C]ounty had ever advised plaintiff of the basis for its refusal to grant [plaintiff] a Master
Electrician's License." (Compl. ¶ 40).

However, defendant declined to issue a master license and filed a notice of appeal on
November 19, 2013, triggering an automatic stay under CPLR § 5519(a)(1).

Plaintiff argues that "such appeals normally take at least one full year for adjudication
and, to date, the County has done nothing to perfect its appeal and has no incentive to do so."
(Id. ¶ 43). Accordingly, due to the effect of the automatic stay provision combined with the
requirement of annual license renewal, plaintiff alleges, "any state court judgment plaintiff
receives will be effectively mooted before it can be decided and without force and effect."
(Id. ¶ 44).

Plaintiff commenced this Section 1983 action on February 6, 2014, alleging defendant
deprived him of a property interest without due process of law. Plaintiff advances four principal
theories in support of his claim. First, plaintiff alleges obtaining a Master Electrician's License
through the grandfathering process is "a right to which plaintiff is entitled." (Id. ¶ 51). Second,
plaintiff argues a Master's Electrician's License is "a right to which [plaintiff] is entitled because
he meets the qualifications set forth by the pertinent Local Law as adjudicated by State Supreme
Court." (Id. ¶ 52). Third, plaintiff argues the relevant law allows the Board "to act in an
arbitrary and capricious manner and does not provide any standards for the determination of
'competency,'" thereby apparently challenging the constitutionality of the law on its face.
(Id. ¶ 53). Finally, plaintiff argues defendant "fail[ed] to supervise" the Board and failed to
ensure that the Board "implements the Local Law as established." (Id. ¶ 54).

3

Plaintiff commenced this action seeking an injunction (i) invalidating Local Law No. 8 as amended as "impermissibly vague," (ii) compelling defendant to grant plaintiff a grandfathered Master Electrician's License, and (iii) compelling defendant to "implement non-arbitrary and standard procedures" for licensure.  Plaintiff also seeks compensatory damages.

## DISCUSSION

I.   Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

4

**SA-4**

II.    Rooker-Feldman

Defendant argues the Rooker-Feldman doctrine deprives the Court of jurisdiction to hear

this case.[3]

The Court disagrees.

The Rooker-Feldman doctrine bars federal courts from hearing claims "brought by state-

court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those

judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (quoting

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Four requirements

must be met for the doctrine to apply: (1) the federal court plaintiff must have lost in state court,

(2) the plaintiff must complain of injuries caused by a state court judgment, (3) the plaintiff must

invite district court review and rejection of that judgment, and (4) the state court judgment must

have been rendered before the district court proceedings commenced. Id. The first and fourth

requirements are procedural, and the second and third requirements are substantive. Id.

Defendant argues that "[i]nasmuch as [p]laintiff concedes that the very heart of the issue

in the present action, the question of whether he is entitled to a master electrician's license, has

already been determined by a state court, this Court does not have subject matter jurisdiction

over this claim," and "[p]laintiff has readily conceded the facts that trigger the Rooker-Feldman

doctrine." (Doc. #10).

Defendant misapplies Rooker-Feldman. Here, plaintiff did not lose in state court and,

therefore, the first of the four requirements has not been met.

---

[3]    The Rooker-Feldman doctrine arises out of two cases: Rooker v. Fid. Trust Co., 263 U.S.
413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Accordingly, Rooker-Feldman does not apply, and the Court has subject matter jurisdiction over this case.

III.    Statute of Limitations

Defendant argues the statute of limitations applicable to Section 1983 actions under New York law bars plaintiff's claim.

The statute of limitations applicable to a Section 1983 claim accruing in New York is three years. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." Van Wormer v. City of Rensselaer, 293 Fed. App'x 783, 783 (2d Cir. 2008) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994)) (summary order).  To assert a claim under Section 1983 based on an alleged violation of procedural due process, plaintiff must plead (1) he possesses a liberty or property interest protected by the Constitution or a federal statute, and (2) he was deprived of that liberty or property interest without due process. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

Assuming, without deciding, that plaintiff has a property interest in a Master Electrician's License, his claim accrued and the statute of limitations began to run at the time of the denial of that license.  Plaintiff first received a Class C license in 2010,[4] which plaintiff argues "is mentioned in the complaint as necessary background" and "is not integral to the plaintiff's current due process claim." (Doc. #8).

---

[4]     The Court again observes an inconsistency arising from the allegation that plaintiff received a Class C License, which was not in existence until the 2011 amendment to the Local Law, in 2010.  Nevertheless, this inconsistency does not affect the statute of limitations analysis.

6

Plaintiff argues "this process is continuing to unfold and it deprives plaintiff of due process." (Id.). To the extent plaintiff is making a "continuing violation" argument, the Court is unpersuaded.

"When a plaintiff experiences a continuous practice and policy of discrimination . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (internal quotation marks omitted), abrogated in part on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

"[C]ourts of this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." Jaghory v. N.Y. State Dept. of Educ., 1996 WL 712668, at *5 (E.D.N.Y. Dec. 5, 1996) (internal quotation marks omitted), aff'd, 131 F.3d 326 (2d Cir. 1997).

In Jaghory v. N.Y. State Dept. of Educ., the court found that plaintiff's claim regarding the denial of his medical license accrued at the time of the first denial, despite plaintiff's reapplication and complaints over the course of twelve years. The court found that "[t]he alleged discriminatory act visited upon [plaintiff] was simply the denial of his license application in 1983 . . . . Neither the State's denial of [plaintiff's] subsequent protests and objections nor the alleged rejection of his 1994 renewal application constitute a continuing violation." Id. (internal quotation marks and brackets omitted).

The Court finds this reasoning persuasive. In the instant case, the requisite "compelling circumstances" are not present.[5]

_____

[5]      Plaintiff argues defendant's reliance on Jaghory v. N.Y. State Dep't of Educ., 1996 WL 712668, is misplaced, because Jaghory did not "involve[] a licensing regime [that] contemplated [annual] re-licensing and the recurrence, each year, of discretionary decision-making which, as

7

Accordingly, plaintiff's claim accrued when he was denied a Master Electrician's License in 2010, more than three years before he commenced this action. Therefore, plaintiff's claim is time-barred.

IV.     Vagueness Challenge

Generally, when "the interpretation of a statute does not implicate First Amendment rights, it is assessed for vagueness only 'as applied,' i.e., 'in light of the specific facts of the case at hand and not with regard to the statute's facial validity.'" United States v. Rybicki, 354 F.3d 124, 129 (2d Cir. 2003) (quoting United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993)).

Nonetheless, the Second Circuit has identified "two potential standards that may govern non-First Amendment vagueness challenges." Dickerson v. Napolitano, 604 F.3d 732, 743 (2d Cir. 2010). First, "such challenges are permitted only when 'no set of circumstances exists under which the [law] would be valid.'" Id. (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). Second, a facial challenge may be permissible in "the presence of a constitutionally-protected right." Id. at 744 (citing City of Chicago v. Morales, 527 U.S. 41, 53 (1999) (plurality opinion)). However, the Second Circuit permits such a challenge "only after concluding that 'the law is "permeated" with vagueness, and, perhaps, that it infringes on a constitutional right and has no mens rea requirement.'" Id. (quoting United States v. Rybicki, 354 F.3d at 131).[6]

Here, because neither of the potential standards governing a non-First Amendment facial challenge applies, plaintiff is limited to an as-applied vagueness challenge.

---

here, violated due process." (Doc. #8). The Court is not persuaded that the annual relicensing requirement is so different from repeated attempts to procure a license so as to render Jaghory inapposite.

[6]     In Dickerson v. Napolitano, the Second Circuit observed that the question of "[w]hether a facial void-for-vagueness challenge can be maintained when . . . a challenge is not properly based on the First Amendment is unsettled" and declined to decide which of these two standards would apply in the event such a challenge could be maintained. See id.

8

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006) (quoting Hill v. Colorado, 530 U.S. 703, 732 (2000)).

Neither of these circumstances exists here. First, both Local Law No. 8 of 2007 and Local Law No. 2 of 2011 clearly set forth the licensing structure and the requisite qualifications for individuals seeking electrician's licenses. Second, both laws provide for the Orange County Electrical Licensing Board to review qualifications and issue licenses to qualified applicants. Although assessing applicants' qualifications is an inherently individualized and fact-specific inquiry, the law does not encourage arbitrary or discriminatory decision-making.

Therefore, the Local Law is not unconstitutionally vague.

## CONCLUSION

Defendant's motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #4) and close this case.

Dated: August 4, 2014
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

9

**SA-9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROBERT CLAVIN,

      Plaintiff,       14 **CIVIL** 769 (VB)

   -against-         **JUDGMENT**

COUNTY OF ORANGE,

      Defendant.
-------------------------------------------------------------X

   Defendant, on March 14 , 2014, having moved to dismiss (Doc. #4), and the matter having

come before the Honorable Vincent Briccetti, United States District Judge, and the Court thereafter,

on August 4, 2014, having handed down its Memorandum Decision granting Defendant's Motion

to Dismiss, it is,

    **ORDERED, ADJUDGED AND DECREED:**  That for the reasons stated in the

Court's Memorandum Decision, dated August 4, 2014, Defendant's Motion to Dismiss is granted

and the case is closed.

**Dated:** White Plains, New York
   August 6, 2014

              _____
              RUBY J. KRAJICK
               Clerk of Court